Donald J. Winder (3519)
   winder@mcgiplaw.com
Matthew B. McCune (15895)
   mccune@mcgiplaw.com
**Magleby Cataxinos & Greenwood**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile: 801.359.9011

Attorneys for Plaintiffs Kaitlyn Cudney, as Mother and Next Friend of W.A.N., a minor,
Kaitlyn Cudney, and William Neria

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KAITLYN CUDNEY, as Mother and Next Friend of W.A.N., a minor, KAITLYN CUDNEY, individually, and WILLIAM NERIA, individually,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>        **Defendant.** | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br><br><br><br>**Case No. 1:17-cv-00190 DBP**<br><br>**Honorable Dustin B. Pead** |

Plaintiffs Kaitlyn Cudney, as Mother and Next Friend of W.A.N., a minor, Kaitlyn

Cudney, individually, and William Neria, individually (collectively, "Plaintiffs"), through

their counsel MAGLEBY CATAXINOS & GREENWOOD, allege and complain against

Defendant United States of America ("Defendant"), and state as follows:

### NATURE OF THE ACTION

1.      This is a civil action for damages resulting from medical malpractice and

damages sustained by Plaintiffs.  This action arises out of the medical care and

treatment provided to Kaitlyn Cudney and her child, W.A.N., by Mark Housley, M.D. and

Steven Beverly, M.D., each deemed employees of Defendant, which was negligently performed in such a manner so as to injure Plaintiffs.

## PARTIES

2.      Plaintiff Kaitlyn Cudney ("Ms. Cudney") is the natural mother of W.A.N. Ms. Cudney is a resident of Roseburg, Douglas County, Oregon.

3.      Plaintiff William Neria ("Mr. Neria") is the father of W.A.N.  Mr. Neria is a resident of Roseburg, Douglas County, Oregon.

4.      Plaintiff W.A.N. ("Baby W.") is the natural child of Ms. Cudney and Mr. Neria.  Baby W., born in Ogden, Weber County, Utah, is a resident of Roseburg, Douglas County, Oregon.

5.      Upon information and belief, Mark Housley, M.D. ("Dr. Housley") is a physician licensed by the State of Utah, a resident of Ogden, Weber County, Utah, and at all times relevant provided healthcare services in Ogden, Weber County, Utah.

6.      At all times relevant, Dr. Housley held himself out to the public as a competent provider of obstetric and gynecologic services, and indeed did provide such services to Ms. Cudney and her unborn child, Baby W.

7.      In providing health care to Ms. Cudney and her unborn child, Baby W., Dr. Housley at all times was acting as the agent, servant, and/or employee of Midtown Community Health Center ("Midtown"), located in Ogden, Utah, and along with Midtown, Dr. Housley was a "deemed employee" of Defendant pursuant to federal law, including the Federally Supported Health Centers Assistance Act, as amended, sections 224(g) – (n) of the Public Health Service Act. 42 U.S.C. §§(g) – (n).

2

8.      At all times relevant, Dr. Housley acted within the scope of his authority as an agent, servant and/or employee of Midtown and deemed employee of Defendant.

9.      Upon information and belief, Steven Beverly, M.D. ("Dr. Beverly") is a physician licensed by the State of Utah, a resident of Ogden, Weber County, Utah, and at all times relevant provided healthcare services in Ogden, Weber County, Utah.

10.     At all times relevant, Dr. Beverly held himself out to the public as a competent provider of obstetric and gynecologic services, and indeed did provide such services to Ms. Cudney and her unborn child, Baby W.

11.     In providing health care to Ms. Cudney and her unborn child, Baby W., Dr. Beverly at all times was acting as the agent, servant, and/or employee of Midtown, and along with Midtown, Dr. Beverly was a "deemed employee" of Defendant pursuant to federal law, including the Federally Supported Health Centers Assistance Act, as amended, sections 224(g) – (n) of the Public Health Service Act. 42 U.S.C. §§(g) – (n).

12.     At all times relevant, Dr. Beverly acted within the scope of his authority as an agent, servant and/or employee of Midtown and deemed employee of Defendant.

## JURISDICTION AND VENUE

13.     The negligent acts and omissions of Defendant, complained of herein, all occurred in Ogden, Weber County, Utah.

14.     This action is being instituted against the United States of America pursuant to the Federal Torts Claims Act, 28 U.S.C. § 2671 et. seq., for the negligent acts and omissions of Federal deemed employees, Dr. Housley and Dr. Beverly.  Thus, this Honorable Court is vested with jurisdiction pursuant to federal statute, including 28 U.S.C. § 1346(b).

15.     Plaintiffs Ms. Cudney, Mr. Neria, and Baby W., have exhausted their administrative remedies as against Defendant and met all conditions precedent to filing this action.

16.     On or about July 26, 2017, Plaintiffs Ms. Cudney, Mr. Neria, and Ms. Cudney on behalf of Baby W. each timely served upon the appropriate federal agency (the U.S. Department of Health & Human Services) a proper Standard Form 95 – Claim for Damage, Injury or Death (with exhibits) in full compliance with the Federal Tort Claims Act.

17.     On or about October 19, 2017, the Department of Health & Human Services made its final determination denying Plaintiffs' administrative claims.  (*See* correspondence from DHHS dated October 19, 2017, attached as Exhibit A).

18.     Venue as to the claim against Defendant lies in this District pursuant to 28 U.S.C. § 1402 because the acts or omissions of the Defendant's deemed employees complained of herein occurred in Ogden, Weber County, Utah.

## ALLEGATIONS RELEVANT TO ALL COUNTS

19.     Ms. Cudney became pregnant in the summer of 2015.

20.     Ms. Cudney's initial prenatal care was in Oregon and later Washington state.  Her estimated due date was determined to be on or around April 15, 2016.

21.     Ms. Cudney relocated to Utah, and beginning on or about February 25, 2016 and continuing through delivery, Ms. Cudney received obstetric care through providers at Midtown.

22.     On her initial visit at Midtown, it was noted that Ms. Cudney's baby was large for gestational age ("LGA"), and that a prior child of Ms. Cudney also was LGA.

4

23.     At her next visit at Midtown on March 14, 2016, Ms. Cudney was 35 3/7 weeks gestation.  Her fundal height (a measure of the size of the uterus, and indicator of the size of the fetus, wherein the length in centimeters typically correlates to the gestational age in weeks) measured 35 centimeters.

24.     On March 21, 2016, Ms. Cudney was 36 3/7 weeks gestation when seen at Midtown.  Her fundal height measured 40 centimeters.

25.     The next day, March 22, 2016, an ultrasound confirmed macrosomia with a fetal weight of 3806 grams (8 lbs., 6 oz.), after which a plan was formed to induce labor as soon as the cervix was favorable.

26.     On March 28, 2016, Ms. Cudney was again seen at Midtown, now at 37 3/7 weeks gestation.  Her fundal height measured 45 centimeters.  Ms. Cudney's cervix was 1 centimeter dilated and 70% effaced.  Induction of labor was planned at 38 weeks gestation.

27.     Three days later, on March 31, 2016, Ms. Cudney's fundus was measured similarly at 44 centimeters.  Her cervix was now 2 centimeters dilated and 80% effaced.

28.     On April 6, 2016, now at 38 5/7 weeks gestation, Ms. Cudney returned to Midtown and was evaluated by Dr. Housley.  Ms. Cudney's fundal height measured 50 centimeters.  Her cervix remained 2 centimeters dilated and 80% effaced.  Dr. Housley advised Ms. Cudney to set up an induction as her cervix was favorable.

29.     On the morning of April 7, 2016, Ms. Cudney presented to McKay-Dee Hospital in spontaneous labor.  She was admitted at approximately 6:45 a.m. at which time she was found to be 5 centimeters dilated.

30.     At McKay-Dee Hospital, as a Midtown patient, Ms. Cudney and her unborn child came under the obstetric care of Dr. Beverly.

31.     Ms. Cudney's labor progressed throughout the morning and afternoon of April 7, 2016, and she became fully dilated at 5:21 p.m.  Pushing began shortly thereafter.

32.     After almost an hour of pushing, at approximately 6:15 p.m., Dr. Beverly attempted an operative vaginal delivery by utilizing a vacuum device.  At approximately 6:19 p.m. the fetal head was delivered with the use of a vacuum.

33.     A severe shoulder dystocia (where the baby's shoulders become stuck and have difficulty passing through the maternal pelvis) developed.

34.     After repeated maneuvers and excessive hard pulling by Dr. Beverly, Baby W. was delivered at 6:21 p.m.

35.     At birth, Baby W. weighed 5465 grams (over 12 pounds).

36.     Immediately after delivery, Baby W. was noted to have limited movement in his right arm.  He had bruising over his arms, caput succedaneum (scalp swelling), and a cephalohematoma (a hemorrhage of blood between the skull and the periosteum).

37.     Baby W. was admitted to the neonatal intensive care unit for pain control and was placed on morphine for the painful injuries he sustained during delivery.

38.     As a consequence of the traumatic delivery, Baby W. suffered a severe right sided brachial plexus/pan plexus injury (from injury to the cluster of nerves that exit the spinal cord in the child's neck), as well as a right sided Horner's Syndrome (eye lid

drooping, constricted pupil, and other symptoms caused by disruption of the eye's nerve supply).

39.     Baby W. has required two repair surgeries for his severe nerve damage, with nerve grafting and nerve transfer, and continues to have significant injuries and disabilities as a consequence of the traumatic delivery.

40.     The injuries Baby W. sustained resulted from negligent care provided by Dr. Housley and Dr. Beverly.

41.     Had Dr. Housley adhered to the applicable standard of care and recognized on April 6, 2016, that Ms. Neria's fundal height, and the likely fetal size, had significantly increased to an unsafe level for an attempted vaginal delivery, and ordered a cesarean section, instead of planning for an induction of labor, Baby W.'s injuries would have been avoided.

42.     Had Dr. Beverly adhered to the applicable standard of care on April 7, 2016, and performed adequate maneuvers or measurements to assess the fetal size, and/or timely reviewed Midtown records from prior visits, so as to recognize that a vaginal delivery should not have been attempted, and performed a c-section, instead of allowed Ms. Neria to delivery vaginally, Baby W.'s injuries would have been avoided.

43.     Had Dr. Beverly further adhered to the standard of care on April 7, 2016, and recognized that Ms. Cudney was not a candidate for an operative vaginal delivery on that date and had not utilized the vacuum, the shoulder dystocia would not have occurred, and again Baby W.'s injuries would have been avoided.

## FIRST CAUSE OF ACTION
### (MEDICAL NEGLIGENCE)

44.     Plaintiffs incorporate by reference and reallege paragraphs 1 through 43 above as if fully restated herein and further allege:

45.     Defendant, acting through its deemed employees Dr. Housley and Dr. Beverly, owed Plaintiffs Ms. Cudney and Baby W. a duty to exercise that degree of skill and care which like health care providers would have exercised in meeting the standard of care under the same or similar circumstances.

46.     Defendant, acting through its deemed employee, Dr. Housley, breached its duty and violated the accepted standards of care for family practitioners providing obstetrical care in the following ways, among others:

       a.     Failing to properly and timely recognize that Ms. Cudney was not a candidate for labor and an attempted vaginal birth;

       b.     Failing to properly and timely schedule Ms. Cudney for a c-section;

       c.     Failing to properly and timely advise Ms. Cudney that she should not undergo labor;

       d.     Failing to properly and timely recognize and respond to the markedly large fundal height on April 6, 2016;

       e.     Failing to communicate and coordinate a plan for a timely c-section; and

       f.     Otherwise failing to meet the applicable standard of care.

47.     Defendant, acting through its deemed employee Dr. Beverly, breached its duty and violated the accepted standard of care for obstetricians, in the following ways, among others:

a.      Failing to properly and timely perform a Leopold maneuver or measurement of fundal height on April 7, 2016;

b.      Failing to properly and timely recognize the markedly large fundal height noted in Ms. Cudney's prenatal records;

c.      Failing to perform a timely c-section, and instead proceeding with a vaginal delivery on April 7, 2016;

d.      Utilizing a vacuum device;

e.      Using excessive force during the delivery process; and

f.      Otherwise failing to meet the applicable standard of care.

48.     Dr. Housley's and Dr. Beverly's conduct as referenced herein constitute negligence and/or gross negligence.

49.     As a direct and proximate result of Dr. Housley's and Dr. Beverly's negligence, Baby W. has suffered, and will continue to suffer severe injury, permanent damage, and medical treatment, including but not limited to:

a.      He has a severe right sided brachial plexus injury, Erb's Palsy, pan plexus injury, Horner's Syndrome, limited use of his right arm and hand, physical impairment, inconvenience, other neurologic injuries, and impaired motor skills;

b.      He has undergone numerous medical treatments, surgeries, and tests;

c.      He has undergone medical, hospital, drug therapy, and therapeutic and rehabilitative care, and incurred expenses associated therewith, and will continue to experience the same in the future;

9

d.      He has received, and will continue to need extraordinary services, equipment and care;

e.      He was caused and will in the future be caused to incur expenses for medical and related services;

f.      He has experienced and will continue to experience pain, suffering and mental anguish;

g.      He has experienced and will continue to experience a diminished quality of life;

h.      He has lost earning capacity; and

i.      He has disabilities, disfigurement, and other permanent injury.

50.      As a further direct and proximate result of Dr. Housley's and Dr. Beverly's negligence, Ms. Cudney and Mr. Neria were caused to expend and will continue to expend in the future tremendous effort and large sums of money for the extraordinary medical, surgical, and hospital care, therapies, treatment, equipment, and other care for their child as well as loss of services.

51.      As a result of Dr. Housley's and Dr. Beverly's breaches and negligent acts or omissions, Plaintiffs are entitled to an award of damages, in substantial amounts to be proven at trial herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Kaitlyn Cudney, as Mother and Next Friend of W.A.N., a minor, Kaitlyn Cudney, and William Neria request that they each be compensated with a fair, adequate, and just award of damages in excess of the required jurisdictional

amount, against Defendant, plus costs, as well as such other and further relief as the

Court deems just and appropriate under the circumstances.


DATED this 12th day of December, 2017.

MAGLEBY CATAXINOS & GREENWOOD

_____

Donald J. Winder
Matthew B. McCune
*Attorneys for Plaintiffs Kaitlyn Cudney, as*
*Mother and Next Friend of W.A.N., a minor,*
*Kaitlyn Cudney, and William Neria*

<FOR INTERNAL USE ONLY.  DO NOT INCLUDE WITH FILED COMPLAINT.>

Serve: **HONORABLE JOHN W. HUBER**
United States Attorney for the District of Utah
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
(By Certified Mail, Return Receipt Requested)

Serve: **HONORABLE JEFF SESSIONS**
Attorney General for the United States
To the attention of Lee J. Lofthus, authorized by the Code of Federal
Regulations to accept service on behalf of the Attorney General of the United
States Department of Justice Justice Management Division
95 Pennsylvania Avenue, NW
Room 1111
Washington, DC 20530-0001
(By Certified Mail, Return Receipt Requested)